The court will proceed to the fourth case, Kubiak v. City of Chicago Ms. O'Malley Good morning, may it please the court, counsel. The two primary issues on this appeal both relate to whether Plaintiff Laura Kubiak has engaged in constitutionally protective speech, rather whether she has plausibly alleged that she engaged in constitutionally protective speech in reporting the continued violence of a violent officer, including to the Internal Affairs Department, against her supervisor's warning not to embarrass the superintendent. The District Court granted dismissal on the pleadings, making a finding that Plaintiff's speech as a matter of law was employee speech, not citizen speech, that did not rise to a level of public concern. The District Court erred in fact and in law. Plaintiff was an Office of News Affairs employee with the Chicago Police Department. She was a news media liaison. Her speech is citizen speech under a straightforward application of Garcetti, as clarified and affirmed in Lane v. Frank's Supreme Court 2014. A simple application of Garcetti and Lane's ordinary daily job duties test, speech commissioned or created by the employer that the employee was paid to do. The employee's work product renders the only conclusion that this speech was citizen speech, not employee speech. Laura Kubiak's report of misconduct was not a part of her ordinary daily job duties. The defendant has never once contended that it was, and the city decidedly did not create or commission speech that it in fact warned her against making. In paragraph 15 of Plaintiff's complaint, she extensively listed her ordinary daily job duties as a news media liaison, including things as part of her job description itself, responding to inquiries from the news media, monitoring the email accounts, creating press releases, creating coverage and files. The job description is immaterial here. What counts is the nature of the speech that you're claiming is actionable under the First Amendment. It's always implicit in any public employment context that an employee report bad behavior by co-workers, and that's the domain that we're in here. This is a report of bad behavior by a co-worker. Your Honor, the – That's quintessentially employment-related speech. What Lane tells us is that – Lane expressly admonished the lower courts and said they were reading Garcetti far too broadly. And what Lane tells us is that general obligations by virtue of one's job title, as is the case here, do not equate with ordinary daily professional responsibilities. Not only does Lane tell us that, but this Court itself in Kurzanowski v. Bianchi already had clarified the parameters of Garcetti when it expressly rejected that a general obligation of employment, in that case a prosecutor, could translate into ordinary daily speech. The Kurzanowski Court expressly rejected that very argument, reversed the lower court on reversing that official duties and responsibilities of an assistant state's attorney as employee speech because an assistant state's attorney is obligated to pursue all criminal offenses. The Court said no, that's an over-reading of Garcetti. Garcetti's rule is daily professional activities, and this Court – the Court – this Court said this conclusion follows, only if one places dispositive weight on an excessively broad job description without assessing, as a practical matter, what task Kurzanowski was paid to perform in the course of his daily professional activities. But isn't this case a little different because we're talking about misconduct of an officer, and you agree that it is under the rules of the Department that the rules require an employee to report misconduct. Or do you not agree with that? I don't agree that her daily ordinary job professional duties required her to do that. Laura Kubiak did not even have traditional law enforcement duties. She didn't make arrests. She was – she had – this was not in her ambit at all. And what Garcetti says in response to Justice Souter raising this very question about general obligations of employment, Garcetti says, no, employers cannot rely on those types of excessively broad job descriptions to take from the First Amendment, to take speech that would otherwise be protected out of the First Amendment's ambit by simply relying on these general obligations. The city has never contended that they can meet the test of ordinary daily job duties. That's why they rely on a general order that applies to all 12,000 Chicago cops and probably beyond. But Garcetti and Lane are very, very clear that that type of general obligation by virtue of one's job title is not the type of speech that will fall within Garcetti's scope. Garcetti basically says, if you're sitting down at your job and you're doing your job and the product of your report is something that your employer disagrees with, that's not protected speech. But if you step outside your job and if you raise your hand and stick your neck out and you say, I think I have something to report, and you are essentially a whistleblower, which is what Laura Kubiak was, that is protected speech. And this is consistent with the court's nearly half-century and well-repeated mandate that public employees do not check their constitutional rights at the door. Public employees, the court has recognized time and time again, including in Garcetti and Lane, that they are the ones best suited to report on what ails the government agencies that they work for. And it's critical that the First Amendment protects their speech. Clearly, here in the city of Chicago, the code of silence and a supervisor's inaction toward violent cops is something that ails our police department. This was not a complaint about a police officer who was abusing a citizen in a police citizen encounter on the street. This isn't a completely internal complaint where the bad actor was getting in your client's face and behaving badly. That's just an employment dispute. If we constitutionalize this, then we're going to have the federal courts supervising every episode of disputes between co-workers in the public employment context. And that's far afield of what the Garcetti Doctrine applies to. Your Honor, the defendant made that argument, and I think that due respect is a gross trivialization of what's going on here. This is not a situation where Bob accuses Susie of taking the stapler all the time and gets angry and goes to the supervisor and says, darn Susie's never going to return my stapler. This is an officer with a known history of violence who in fact was found guilty of excessive force while he was in the Office of News Affairs and was so emboldened because the city has never once taken action to remediate his violence that in the very same building of police headquarters that the superintendent's office is in, he felt so emboldened that he committed a violent criminal act toward my client to which another employee felt was so severe she was afraid he was going to take out his gun and shoot Laura Kubiak. And Laura Kubiak is after all a citizen. She does not check either her constitutional rights or her protections at the door when she walks inside that police office. And with regard to the aspect of police misconduct, it's still police misconduct. Under the Chicago Police Board rules, which the city set forth, in our view improperly the city, as our briefs rely on, submitted over a thousand pages of documents which really clarifies that this in fact is a case that should have a fully developed factual record and should not have been dismissed on the pleadings because the city by virtue of doing so has converted their underlying motion to dismiss to a summary judgment. The plaintiff is entitled to develop a factual record to rebut those things. But the city's documents that they rely on do three important things. Number one, they're self-defeating with regard to employee speech because those documents identify the Office of News Affairs serves as a liaison between the department and news media relative to the following activities. Number one, gathering information on crimes, crime prevention and police activities. Number two, writing press releases. Number three, administering the ride-along program for members of the news media. And number four, dissemination of information to the public through the news media. Nothing in that description says that the Office of News Affairs employees have a general, everyday, daily routine duty to report misconduct to their fellow officers, nor do they even have traditional law enforcement duties. Conversely, in that very same document, the document goes on to say that a Bureau of Investigative Affairs employee, on the other hand, would have a duty to investigate misconduct. And I would agree, if she were an IAD employee, that that would be exactly Garcetti. That was her work product. The job descriptions are largely irrelevant here. Again, the proper focus is the nature of the speech that is alleged to be protected here. And if it's related to the conditions of employment, then it's employment related. And this was a complaint about a co-worker who was harassing your client. Your Honor, that is a characterization that if the defense wants to argue to a jury, they are free to do so. However, it is not a characterization that this Court can accept on a pleadings motion, because I, of course, would argue to a jury that this is a very important complaint of a police officer's misconduct that was so violent, somebody feared that he was going to take out his gun, and it was an officer with a history of violence, and that the supervisors did nothing about it. So Laura Kubiak took matters into her own hands, did exactly what a citizen can do, and went to the Internal Affairs Department, and made the same kind of complaint that a citizen can make with the purpose of effecting change. Importantly... And it was also out of fear for her own safety. I mean, this is a mixed motive case. Of course. But as this Court recognized in Cristofac, we did plead that it was fear for her own safety, fear for the safety of others, and her concern that her supervisors continue to take no action, which emboldened Officer Zala to continue his violence. So as this Court recognized in Cristofac, motive is neither dispositive at all, and importantly, the District Court in this case is the same Court in Cristofac, and was expressly admonished in the Cristofac 1 opinion that it was a fundamentally erroneous principle to make motive a dispositive matter, and to dismiss a complaint on the pleadings ascribing plaintiff for motive. The District Court in this case not only disregarded the well-plaid allegations that she had concern not just for herself but others and her supervisors in action, but the District Court also made that finding on the pleadings against the plaintiff, and then engaged in the exact same fundamentally erroneous principle of law that he was admonished not to by this Court in Cristofac. I see that I am going into my rebuttal time. I will just state that the content of the speech is what matters most. The defendant here concedes that there is a strong public interest in the Police Department's vigilance over its officers and the misconduct of police officers. That's exactly what plaintiff reported. Ms. Miley? Yes. What do you make of our Spiegler v. Hull case? In Spiegler? That's the case of the correctional officer, an 07 case. Are you familiar with that case? Yes, I am. And a few things about Spiegler. Number one, Spiegler was decided pre-Kursanowski and pre-Lane v. Franks. But number two, and this is important, Spiegler was a correctional officer who had the duty, was assigned to the gate at the jail. It was her responsibility on an everyday basis to ensure the safety of the prison gate. When she tried to make a stop and the other officers told her not to search their car, which she thought was contraband, she went and told her superiors, hey, these guys are telling me not to search the car. So then she was taken off of that duty and she brought her case. That was absolutely Garcetti. That's in the scope of her everyday job duties to maintain the security of that gate. Here, Laura Kubiak is not an internal affairs officer. She's office of news affairs, news media liaison, with zero duties as a defendant, has never argued that her ordinary duties include reporting misconduct. I will reserve the balance of my time for rebuttal. Thank you. Thank you. Thank you, Mr. O'Malley. Ms. Leighton. May it please the court. Counsel. Your Honors, Ms. Kubiak's speech was not constitutionally protected for two reasons. First, she spoke pursuant to her mandatory employment duties. And second, the substance of her expression did not address a matter of public concern. This morning, I intend to focus my remarks on those two issues. And with respect to our alternative arguments on Monell and the conspiracy count, we will rest on our brief unless the court has specific questions. Turning first to employee job duties, the outcome of this case is squarely controlled by Garcetti along with the line of this court's cases that followed Garcetti that deal explicitly with law enforcement employers. And those cases, we cite at least six of them in our brief, hold that where a law enforcement employer has rules or regulations or general orders that require certain reporting, including reporting misconduct, that is within the scope of the employee's job duties and speech pursuant to those rules or regulations is not protected by the Constitution. Well, even if Ms. Kubiak was under a duty to report Mr. Zala's misconduct and you acknowledge, I think, that he had had problems before, isn't it possible that she reported him not as a fellow police officer but as a woman concerned for her safety and the safety of others given the ineffectiveness of the department in terms of dealing with him? Mm-hmm. Well, Your Honor, that certainly is possible that she had those concerns in her head, but there are two parts to the test, as Your Honor is aware, and that seems to be on the second prong about whether the content of her speech was on a subject matter of public concern. And on that prong, it is the expression, the manner in which she expresses her complaint, not just whether the subject is potentially of public concern. And as the court in Christofect explained, it's not merely the secret intent that lies in the speaker's head, it's the way in which that's expressed. As Connick and the other Supreme Court cases made clear, it's not enough for it to be on a subject that in a different context could be expressing a subject that's of public concern. Rather, it has to be, the test for the court is whether this particular expression was directed towards, whether the point of this speech was directed towards raising that public concern. And in this case, Ms. Kubiak does not allege that the substance of what she said as opposed to what might have been the thoughts that were in her head was directed towards raising the subject matter of public concern. She probably goes as far as she can with respect to the allegations about what she actually said. But what she said was not directed towards raising Mr. Zala's background. It was not directed towards raising the way her supervisors had handled it. She alleges that she limited the focus of her remarks for her complaints was on her personal altercation with Mr. Zala. So, under this court's and the Supreme Court's precedent, it's not enough that she, the subject matter could in a different context if she had expressed it differently been of public concern or that she may have had these other thoughts inside her head when that was not apparent from the manner in which she expressed herself. Does subjective intent have any role to play in this context? The subjective intent has to do with one of the factors. There's content, the context, and the form. And that says none of those things suggest that subjective intent has any role to play here. Those are all objective measures. Yes, Your Honor. Correct? Not subjective measures. You're correct. You're correct, Your Honor. I apologize. So take subjective intent because the other motivations are irrelevant. Absolutely. The subjective intent is not relevant unless what's actually expressed on the page may match that. If, you know, if what's expressed It's not even relevant in that context. We look at the speech itself to determine whether Correct. it's constitutionally protected. Absolutely. Whether the defendant intended it to be constitutionally protected speech doesn't matter. No, absolutely. You're absolutely correct, Your Honor. The point is the manner in which it's expressed and then looking at that. And in Chris' effect this court analogized to contract law where it's not necessarily what might have been the secret motive of the people making the contract. It's what's expressed in the language of the contract. What's expressed on the page. And objectively because it is a question of law for the court that turns on the manner of the expression. So on that prong we submit that nothing in the complaint's allegation supports that what Ms. Kubiak expressed rose to the level of public concern. On the other prong regarding that is just a question of what the employer's real rules and expectations are. And this court has held in a line of its cases that where there are job real rules and expectations that say rules and expectations of law enforcement officers that require certain reporting then speech that is made pursuant to those rules and regulations is employee speech. Is that a necessary condition? Is which part your honor a necessary condition? That there be an employment related duty to report. On the job duty prong it has to be part of one of the employer's real rules and expectations. It doesn't necessarily have to be. Are you sure about that? That's a necessary condition. What? I'm sorry I may have misunderstood. That the employer has to have promulgated rules and regulations. No, no, no, no. It has to be part of the employer's rules and expectations but not necessarily written out in any kind of written document. It just has to be employment related. It doesn't matter what the employer was expecting. That's also a subjective inquiry. Okay, your honor. What, I mean a lot of the cases focus on what job duties are but that's just because of the fact pattern of the case. I don't read any of that case law to establish a doctrinal requirement that there must be either a job description or some rules and regulations for the workplace that make reporting mandatory before this is considered employment related speech. Well we certainly agree that it has to be clear from Garcetti and that's clear from this other court's cases but it does have to be part of the job responsibilities. It can't just be that Garcetti's cautioned against having an overly broad job description so that's perhaps where some of that comes from. Some of the concern in the cases that it be within the employer's expectations for the employee but the point is that the employer if the employer is acting pursuant to job duties then the speech is not constitutionally protected and we submit that Lane did not change Garcetti with respect to this. In fact, Lane expressly stated that it was not addressing any sort of question about whether the conduct at issue there was within the scope of job duties because there the parties had agreed that testifying pursuant to subpoena was not  the employee's official job duties. So, Garcetti addressed the realm of job duties and this court's cases that followed Garcetti applied that rule to law enforcement context and again the result was if there was a general order and we cite six cases where if there's a general order that required the reporting then it was pursuant to job duties and not constitutionally protected. Lane addressed a different kind of speech altogether. It wasn't the question whether it was within the employee's job duties to testify pursuant to subpoena because everyone agreed it was not. Instead, the court in Lane was addressing whether speech outside of employment or citizen speech and the court held it was citizen speech. That's not the case we have here and Ms. Kubiak does not even take issue with the line of cases that we rely on that include Houskins and Sigsworth and Spiegla and other of this kind. This court could not find from Ms. Kubiak without ignoring or brushing aside that line of cases that imply Garcetti to law enforcement. Well, if we find in her and don't agree with you that her speech was protected and it was and the first amendment claim was improperly dismissed of necessity wouldn't we have to say the district court erred in terms of the Manel and conspiracy claims because the district court's decision on that on those claims was based on the false premise that the first amendment claim was not sufficiently pleaded. That was the ground for the district court's holding your honor but we submit in our brief an alternate ground that we raised below which was that the Manel claim also fails because Ms. Kubiak doesn't plead a policy maker or widespread policy sufficiently and we also submit that the conspiracy count should be dismissed independently even if the count one against the individual survives because the conspiracy count the allegations failed to show a plead that there was an agreement between those the two individual defendants and so it didn't satisfy the pleading requirements for a conspiracy claim and also that the claim would be barred by the intra- corporate conspiracy doctrine so were the court to reverse on count one we still submit that the claim against the city should be dismissed because monel ment requirements are not satisfied and also that the count two should be dismissed as a conspiracy count because that failed to plead a claim successfully so but we again urged the court to dismiss the entire complaint and affirm the district court because on count one which the Ms. Kubiak speech excuse me was not constitutionally protected so if she had just been a beat cop I guess your position would be the same if she was a beat cop that that was within the scope of her yes your honor and she and Ms. Kubiak actually conceived what about if she was a secretary or an administrative assistant to someone in the department would you take that same position we wouldn't necessarily take the same position your honor because we are relying on the general orders that do apply to all police officers within the department so then you're saying that administrative people don't have any obligation to report misconduct they don't have the same obligations I don't know what rules specifically apply to them but we rely on general orders and the rules of conduct that apply specifically to police officers which require when a non supervisory member like Ms. Ritchie to report misconduct to immediately notify a supervisory member and prepare a written report to their unit commanding officer and because that is a clear expectation that the CPD has fourth officers no matter what division the officer serving in whether it's internal affairs or whether it's the office of news affairs is irrelevant because all officers are under these obligations to report it is one of the expectations that CPD has for its employee and therefore it's a job duty but the general orders are not necessary to your argument that's correct your honor so you're not conceding anything with respect to administrative employees we're not conceding anything we're just saying that that's probably be making the same argument administrative employee of the police department not under those general orders made a complaint that a co-worker was harassing her you'd be here making the same argument even without the general orders in all likelihood we'd be making the same argument because it's employment speech it's not private citizen speech it's employment speech it's an internal complaint about a co-worker that the expression the specific expression was not addressed to raising anything about Mr. Zala's background that could be of interest to the public it was purely about the facts about what happened between Mr. Zala and Ms. Kubiak in that particular incident and Ms. Kubiak if the federal constitution doesn't apply does not leave her without a remedy if she has state law remedies and she has internal remedies through grievances and so forth but the question for the federal court is whether the constitution applies and where the speech is not protected because it falls outside the job duties and because it's not addressed to raising a matter of public concern then there is no federal case and the fact that she felt that there was a motive to raise the matter of public concern  can't just be this could be of interest to the public if it had been expressed differently from the case or in a different forum or written in a letter to the newsletter because otherwise then the federal courts would be involved in every kind of employment dispute because everything that's said in a government complaint  filed with the department. So Ms. O'Malley why don't you begin with exactly what she said in her complaint. Well this is a plea filed with the department. What she reported was an officer with a history of criminal offenses with her supervisors and that her supervisors again in the face of Zala's continued inaction did nothing. So she took it to a department that had the ability to do something about it. The city is wrong to presume what the point of her speech is. To date they have not taken her deposition. This is a pleading case unlike speak law which was a jury  that would not benefit Laura Kubiak. It's all about accountability. She doesn't get any money. She doesn't get a promotion. She doesn't get anything like that. She reports him because as it said in her complaint the court wasn't free to dispute that she was concerned about the safety of others. I agree that job descriptions don't matter. What that means is that job descriptions don't matter. It cannot argue that the news media liaison has an ordinary job duty to report a widespread practice at the expense of whistle blowers like Laura Kubiak. The Supreme Court stated in Garrity v. New Jersey that police officers like teachers and lawyers do not check their constitutional rights at the door. Laura has a constitutional right to free speech. She did not as the defendant cannot argue operate within her daily job duties. It would be abhorrent to the First Amendment and a dangerous policy to retaliate against whistle blowers reporting officer violence. One final thing  terms of the Monell claim. Should we agree that she engaged in protected speech? You haven't really pled the elements necessary to get by on the Monell claim. I understand the District Court dismissed it given the ruling on the First Amendment. We did plead that the city had a widespread practice of retaliating against whistle blowers. We identified two violent officers. Officer Estrada was also rewarded with a job at the ONA. Significantly, he even laughed at her and warned her when she went to IAD, you better watch out because these two felt so emboldened. This practice of rewarding these guys resulted in her injury. Making the officers believe their actions would never be scrutinized resulting in the injury that leads to her ensuing removal along with Perez from the ONA. This is a pleading motion. This is sufficient to establish a Monell claim. We respectfully ask this      and on both the citizen speech and the plaintiff speech and the plaintiff speech and the plaintiff speech on the Monell obligation to remand this matter so that they can make an inquiry Garcetti mandates on a fully developed record. After she was read assigned the midnight shift in the dangerous neighborhood as a beat cop. She was involuntarily removed from the office of news affairs where she served for 13 years and had more seniority and officers all up to date has never been reprimanded at all. Thank you.